# EXHIBIT A

10/17/2016 2:51:56 PM
Chris Daniel - District Clerk Harris County
Envelope No. 13277443
By: Bonisha Evans
Filed: 10/17/2016 2:51:56 PM

# 2016-70651 / Court: 061

NO. _____

| | |
|---|---|
| ST. LUCIE COUNTY FIRE DISTRICT FIREFIGHTERS' PENSION TRUST, Individually and on Behalf of All Others Similarly Situated, § § § | IN THE DISTRICT COURT OF |
| Plaintiff, § § § | |
| v. § | |
| SOUTHWESTERN ENERGY COMPANY, STEVEN L. MUELLER, R. CRAIG OWEN, JOSH C. ANDERS, JOHN D. GASS, CATHERINE A. KEHR, GREG D. KERLEY, TERRY L. RATHERT, VELLO A. KUUSKRAA, KENNETH R. MOURTON, ELLIOTT PEW, ALAN H. STEVENS, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, CITIGROUP GLOBAL MARKETS INC., J.P. MORGAN SECURITIES LLC, WELLS FARGO SECURITIES, LLC, BNP PARIBAS SECURITIES CORP., RBS SECURITIES INC., BMO CAPITAL MARKETS CORP., MITSUBISHI UFJ SECURITIES (USA), INC., MIZUHO SECURITIES USA INC., SMBC NIKKO SECURITIES AMERICA, INC., BBVA SECURITIES INC., CREDIT AGRICOLE SECURITIES (USA) INC., RBC CAPITAL MARKETS, LLC, CIBC WORLD MARKETS CORP., SG AMERICAS SECURITIES, LLC BB&T CAPITAL MARKETS, A DIVISION OF BB&T SECURITIES, LLC, ROBERT W. BAIRD & CO. INCORPORATED, COMERICA SECURITIES, INC., FIFTH THIRD SECURITIES, INC., HSBC SECURITIES (USA) INC., HEIKKINEN ENERGY SECURITIES, LLC, KEYBANC CAPITAL MARKETS INC., MACQUARIE CAPITAL (USA) INC., PNC CAPITAL MARKETS LLC, SCOTIA CAPITAL (USA) INC., TUDOR, PICKERING, HOLT & CO. SECURITIES, INC., and U.S. BANCORP INVESTMENTS, INC. § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | HARRIS COUNTY, TEXAS |
| Defendants § | _____ JUDICIAL DISTRICT |

## ORIGINAL PETITION FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Certified Document Number: 72345178 - Page 1 of 26

Plaintiff St. Lucie County Fire District Firefighters' Pension Trust ("St. Lucie" or "Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which includes, among other things, a review of Securities and Exchange Commission ("SEC") filings made by Southwestern Energy Company ("Southwestern" or the "Company"), analyst and media reports, and other commentary analyses concerning Southwestern. Plaintiff's investigation into the matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within the custody and control of, the Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for formal discovery.

## DISCOVERY CONTROL PLAN

1.      Discovery is intended to be conducted under Level 3, pursuant to the Texas Rules of Civil Procedure.

## NATURE AND SUMMARY OF THE ACTION

2.      Plaintiff brings this action under §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") against (1) Southwestern; (2) certain of Southwestern's senior executives and directors who signed the Registration Statement (as defined below) in connection with the Company's January 15, 2015 convertible preferred stock offering (the "Offering") and (3) each of the investment banks that acted as underwriters for the Offering. In the Offering, the Company and the underwriters sold 30,000,000 depositary shares, each of which represents a 1/20th interest in a share of Southwestern's 6.25% Series B Mandatory Convertible Preferred Stock (the "Convertible Preferred Stock"), with a liquidation preference of $1,000 per share

Certified Document Number: 72345178 - Page 2 of 26

2

(equivalent to a $50 liquidation preference per depositary share), at a price of $50 per depositary share.  Southwestern's preferred stock is listed and traded on the New York Stock Exchange ("NYSE") under the ticker symbol "SWNC."[1]

3.      Defendant Southwestern is an independent natural gas and oil company that explores for, develops, and produces natural gas and oil primarily in the United States.  As of December 31, 2015, the Company had a pipeline of 2,044 miles in Arkansas and 16 miles in Louisiana in its gathering systems.  Southwestern was founded in 1929 and is headquartered in Spring, Texas.

4.      On or around January 15, 2015, Southwestern conducted the Offering, selling 30,000,000 depositary shares, at a price to the public of $50.00 per share, each of which represents a 1/20th interest in a share of Southwestern Energy's 6.25% Series B Mandatory Convertible Preferred Stock (the "Convertible Preferred Stock").  The net  proceeds, after expenses, to Southwestern from the Offering were approximately $1.672 billion.

5.      In violation of the Securities Act, Defendants negligently issued untrue statements of material facts and omitted to state material facts required to be stated from the Registration Statement and incorporated Offering Materials that the Company filed with the SEC in support of the Offering.  Defendants are strictly liable for any and all material untrue statements or omissions in the Offering Materials.  Furthermore, because this case involves a Registration Statement, Defendants also had an independent, affirmative duty to provide adequate disclosures about adverse conditions, risks, and uncertainties.  *See* Item 303 of SEC Reg. S-K, 17 C.F.R. § 229.303(a)(3)(ii).  Thus, Defendants had an affirmative duty to ensure that the Registration

---

[1]  Herein after, all "shares" and/or "stock" refer to Southwestern's preferred stock traded on the NYSE under the ticker symbol "SWNC."

Certified Document Number: 72345178 - Page 3 of 26

Statement and the materials incorporated therein disclosed material trends and uncertainties that they knew, or should have reasonably expected, would have a materially adverse impact on Southwestern's business.  Defendants failed to fulfill this obligation as well.

6.      Unbeknownst to investors, the Registration Statement's representations were materially untrue, inaccurate, misleading, and/or incomplete because, upon information and belief, at the time of the Offering, the Company failed to disclose that the Company was experiencing severe liquidity and debt issues that threatened its ability to continue its drilling activities.

7.      Unfortunately for investors, the truth concerning the nature and extent of the problems facing the Company did not begin to emerge until the Offering was complete when, on January 21, 2016, the Company revealed in a letter to the Texas Workforce Commission that it would lay off 376 employees at its office located in Spring, Texas.  The layoffs in Spring, Texas, were part of the Company's larger workforce reduction plan, revealed in its January 21, 2016 Form 8-K filing, to cut 1,100 positions, including 600 employees throughout its Fayetteville Shale operations in Arkansas.  On January 25, 2016, as a result of news articles published detailing the Company's layoffs, Southwestern's stock price dropped 9%.

8.      Then, on February 25, 2016, after the market closed, the Company provided an update on its strategic plans for 2016.  Most notably, the Company reiterated its "decision to temporarily halt its drilling activities . . . ."  On this news, Southwestern's stock price dropped over 14%.

9.      On February 29, 2016, Raymond James equity analyst Kevin Smith cut Southwestern to "underperform" from "market perform."  Citigroup analyst Robert Morris also stated that the Company's initial 2016 capital budget was "well below expectations."  The

Certified Document Number: 72345178 - Page 4 of 26

Company previously announced it plans no drilling activity in 2016 and will complete 20-30 wells that have already been drilled.   On this news, Southwestern's stock price dropped approximately 8%.

10.     On April 28, 2016, a putative class action was filed against Southwestern in Arkansas federal court claiming that it was shortchanging natural gas drilling rights holders. Plaintiff Charles Hicks ("Hicks") claims the drilling company fraudulently charges lessors fees for post-production marketing or withholds the fees from their royalty payments, and measures the gas extracted at the wrong time during production in order to reduce payments.   Hicks seeks to represent more than 1,000 of his fellow drilling rights holders in the Fayetteville Shale formation paid by Southwestern.   The complaint stated that "[t]hese methods of accounting for gas sales reduced the amount of royalties and excess royalties and unjustly increased the profits of the Defendants."   On this news, Southwestern's stock price dropped again by 4.79%.

11.     Finally, on June 9, 2016, the Company announced after the market closed, that it sold 55,000 net acres of land in West Virginia for $450 million due to its looming debt obligations.   Specifically, the Company intends to use the sale to reduce the principal balance of its term loan, which is due in November 2018.   On this news, Southwestern's stock price dropped another 8.45%.

12.     The stock has plummeted by over 39% since its Offering.   As of October 14, 2016, the last trading day before this complaint was filed, the Company's shares closed at $30.10 per share.   For all of the claims stated herein, Plaintiff expressly excludes any allegation that could be construed as alleging fraud or intentional or reckless misconduct.   Plaintiff's claims are based solely on claims of strict liability under the Securities Act.   By this action, Plaintiff, on behalf of himself and the other Class members who also acquired the Company's shares pursuant

Certified Document Number: 72345178 - Page 5 of 26

or traceable to the Offering, now seeks to obtain a recovery for the damages he has suffered as a result of Defendants' violations of the Securities Act, as alleged herein.

## JURISDICTION AND VENUE

13.     This Court has subject jurisdiction pursuant to Tex. Gov't Code Ann. § 24.007 and Section 22 of the federal Securities Act, 15 U.S.C. § 77v.  Defendants' principal place of business is located in the state of Texas, and many of the Defendants have offices in Texas.

14.     This action is not removable.  The claims alleged herein arise under §§ 11, 12(a)(2), and 15 of the Securities Act.  *See* 15 U.S.C. §§ 77k, 77l(a)(2), and 77o.  Section 22 of the Securities Act, 15 U.S.C. § 77v, expressly states that "[e]xcept as provided in [section 16(c)], no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."  Section 16(c) refers to "covered class actions brought in any State court involving a covered security, as set forth in subsection (b)"; and subsection (b) of Section 16, in turn, includes within its scope only covered class actions "based upon the statutory or common law of any State or subdivision thereof."  *See* 15 U.S.C. § 77p. This is an action asserting only federal law claims.  Thus, this action is not removable to federal court.

15.     This Court has personal jurisdiction over each Defendant because they are either citizens of the State of Texas and/or the claims and allegations asserted herein arise from conduct and actions taken by Defendants which occurred within the state of Texas, including the operations of Southwestern and various Board meetings, such that due process of law will not be offended by this Court's exercise of personal jurisdiction over each Defendant.

16.     Venue is proper pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 15.002 because many Defendants have places of business in Harris County, Southwestern has its principal place

Certified Document Number: 72345178 - Page 6 of 26

of business located within Harris County, and numerous actions relating to the claims at issue in this action occurred within this Court's venue, including the preparation and dissemination of the materially inaccurate, misleading, and incomplete Registration Statement and Prospectus (which were prepared by Defendants, or with their participation, acquiescence, encouragement, cooperation, and/or assistance) which occurred in whole or in substantial part in this county.

**PARTIES**

**A.**     **Plaintiff**

17.     Plaintiff St. Lucie County Fire District Firefighters' Pension Trust purchased shares of the Company's Convertible Preferred Stock pursuant and/or traceable to the untrue and misleading Registration Statement and was damaged thereby.

**B.**     **Defendants**

18.     Defendant Southwestern is an independent natural gas and oil company that explores for, develops, and produces natural gas and oil, primarily in the United States.  As of December 31, 2015, the Company had a pipeline of 2,044 miles in Arkansas and 16 miles in Louisiana in its gathering systems.  Southwestern was founded in 1929 and is headquartered in Spring, Texas.  Southwestern's preferred stock are listed and traded on the NYSE under the ticker symbol "SWNC."

19.     Defendant Steven L. Mueller ("Mueller") was, at all relevant times, the Company's Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board").  Defendant Mueller signed or authorized the signing of the Registration Statement.

20.     Defendant R. Craig Owen ("Owen") was, at all relevant times, the Company's Chief Financial Officer ("CFO") and Senior Vice President.  Defendant Owen signed or authorized the signing of the Registration Statement.

Certified Document Number: 72345178 - Page 7 of 26

21.     Defendant Josh C. Anders ("Anders") was, at all relevant times, Vice President and Controller of the Company.  Defendant Anders signed or authorized the signing of the Registration Statement.

22.     Defendant John D. Gass ("Gass") was, at all relevant times, a director of the Company. Defendant Gass signed or authorized the signing of the Registration Statement.

23.     Defendant Catherine A. Kehr ("Kehr") was, at all relevant times, a director of the Company. Defendant Kehr signed or authorized the signing of the Registration Statement.

24.     Defendant Greg D. Kerley ("Kerley") was, at all relevant times, a director of the Company. Defendant Kerley signed or authorized the signing of the Registration Statement.

25.     Defendant Terry L. Rathert ("Rathert") was, at all relevant times, a director of the Company. Defendant Rathert signed or authorized the signing of the Registration Statement.

26.     Defendant Vello A. Kuuskraa ("Kuuskraa") was, at all relevant times, a director of the Company.  Defendant Kuuskraa signed or authorized the signing of the Registration Statement.

27.     Defendant Kenneth R. Mourton ("Mourton") was, at all relevant times, a director of the Company.  Defendant Mourton signed or authorized the signing of the Registration Statement.

28.     Defendant Elliot Pew ("Pew") was, at all relevant times, a director of the Company. Defendant Pew signed or authorized the signing of the Registration Statement.

29.     Defendant Alan H. Stevens ("Stevens") was, at all relevant times, a director of the Company. Defendant Stevens signed or authorized the signing of the Registration Statement.

30.     Defendants Mueller, Owen, Anders, Gass, Kehr, Kerley, Rathert, Kuuskraa, Mourton, Pew, and Stevens are collectively referred to herein as the "Individual Defendants."

Certified Document Number: 72345178 - Page 8 of 26

31.      The Individual Defendants each participated in the preparation of and signed (or authorized the signing of) the Registration Statement.    Defendant Southwestern and the Individual Defendants who signed (or authorized the signing of) the Registration Statement are strictly liable for the materially untrue and misleading statements incorporated into the Registration Statement.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Southwestern's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market.

32.      Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") was an underwriter for the Offering.    In the Offering, Merrill Lynch agreed to purchase 11,520,000 Southwestern shares.  Merrill Lynch acted as a joint book-running manager of the Offering.

33.      Defendant Citigroup Global Markets Inc. ("Citigroup") was an underwriter for the Offering.    In the Offering, Citigroup agreed to purchase 3,375,000 Southwestern shares. Citigroup acted as a joint book-running manager of the Offering.

34.      Defendant J.P. Morgan Securities LLC ("J.P. Morgan") was an underwriter for the Offering.  In the Offering, J.P. Morgan agreed to purchase 3,375,000 Southwestern shares. J.P. Morgan acted as a joint book-running manager of the Offering.

35.      Defendant Wells Fargo Securities, LLC ("Wells Fargo") was an underwriter for the Offering.  In the Offering, Wells Fargo agreed to purchase 3,375,000 Southwestern shares. Wells Fargo acted as a joint book-running manager of the Offering.

Certified Document Number: 72345178 - Page 9 of 26

36.     Defendant BNP Paribas Securities Corp. ("BNP Paribas") was an underwriter for the Offering.  In the Offering, BNP Paribas agreed to purchase 885,000 Southwestern shares. BNP Paribas  acted as a joint book-running manager of the Offering.

37.     Defendant RBS Securities Inc. ("RBS") was an underwriter for the Offering.  In the Offering, RBS agreed to purchase 1,050,000 Southwestern shares.  RBS acted as a senior co-manager of the Offering.

38.     Defendant BMO Capital Markets Corp. ("BMO") was an underwriter for the Offering.  In the Offering, BMO agreed to purchase 735,000 Southwestern shares.  BMO acted as a senior co-manager of the Offering.

39.     Defendant Mitsubishi UFJ Securities (USA), Inc. ("Mitsubishi") was an underwriter for the Offering.   In the Offering, Mitsubishi agreed to purchase 675,000 Southwestern shares.  Mitsubishi acted as a senior co-manager of the Offering.

40.     Defendant Mizuho Securities USA Inc. ("Mizuho") was an underwriter for the Offering.  In the Offering, Mizuho agreed to purchase 675,000 Southwestern shares.  Mizuho acted as a senior co-manager of the Offering.

41.     Defendant SMBC Nikko Securities America, Inc. ("SMBC Nikko") was an underwriter for the Offering.   In the Offering, SMBC Nikko agreed to purchase 675,000 Southwestern shares.  SMBC Nikko acted as a senior co-manager of the Offering.

42.     Defendant BBVA Securities Inc. ("BBVA") was an underwriter for the Offering. In the Offering, BBVA agreed to purchase 405,000 Southwestern shares.  BBVA acted as a co-manager of the Offering.

Certified Document Number: 72345178 - Page 10 of 26

43.     Defendant Credit Agricole Securities (USA) Inc. ("Credit Agricole") was an underwriter for the Offering.   In the Offering, Credit Agricole agreed to purchase 405,000 Southwestern shares.  Credit Agricole acted as a co-manager of the Offering.

44.     Defendant RBC Capital Markets, LLC ("RBC") was an underwriter for the Offering.  In the Offering, RBC agreed to purchase 309,000 Southwestern shares.  RBC acted as a co-manager of the Offering.

45.     Defendant CIBC World Markets Corp. ("CIBC") was an underwriter for the Offering.  In the Offering, CIBC agreed to purchase 240,000 Southwestern shares.  CIBC acted as a co-manager of the Offering.

46.     Defendant SG Americas Securities, LLC ("SG Americas") was an underwriter for the Offering.  In the Offering, SG Americas agreed to purchase 240,000 Southwestern shares. SG Americas acted as a co-manager of the Offering.

47.     Defendant BB&T Capital Markets, a division of BB&T Securities, LLC ("BB&T") was an underwriter for the Offering.   In the Offering, BB&T agreed to purchase 165,000 Southwestern shares.  BB&T acted as a co-manager of the Offering.

48.     Defendant Robert W. Baird & Co. Incorporated ("Baird") was an underwriter for the Offering.  In the Offering, Baird agreed to purchase 165,000 Southwestern shares.  Baird acted as a co-manager of the Offering.

49.     Defendant Comerica Securities, Inc. ("Comerica") was an underwriter for the Offering.  In the Offering, Comerica agreed to purchase 165,000 Southwestern shares.  Comerica acted as a co-manager of the Offering.

Certified Document Number: 72345178 - Page 11 of 26

50.     Defendant Fifth Third Securities, Inc. ("Fifth Third") was an underwriter for the Offering.  In the Offering, Fifth Third agreed to purchase 165,000 Southwestern shares.  Fifth Third acted as a co-manager of the Offering.

51.     Defendant HSBC Securities (USA) Inc. ("HSBC") was an underwriter for the Offering.  In the Offering, HSBC agreed to purchase 165,000 Southwestern shares.  HSBC acted as a co-manager of the Offering.

52.     Defendant Heikkinen Energy Securities, LLC ("Heikkinen") was an underwriter for the Offering.  In the Offering, Heikkinen agreed to purchase 165,000 Southwestern shares. Heikkinen acted as a co-manager of the Offering.

53.     Defendant KeyBanc Capital Markets Inc. ("KeyBanc") was an underwriter for the Offering.  In the Offering, KeyBanc agreed to purchase 165,000 Southwestern shares.  KeyBanc acted as a co-manager of the Offering.

54.     Defendant Macquarie Capital (USA) Inc. ("Macquarie") was an underwriter for the Offering.  In the Offering, Macquarie agreed to purchase 165,000 Southwestern shares. Macquarie acted as a co-manager of the Offering.

55.     Defendant PNC Capital Markets LLC ("PNC") was an underwriter for the Offering.  In the Offering, PNC agreed to purchase 165,000 Southwestern shares.  PNC acted as a co-manager of the Offering.

56.     Defendant Scotia Capital (USA) Inc. ("Scotia Capital") was an underwriter for the Offering.  In the Offering, Scotia Capital agreed to purchase 165,000 Southwestern shares. Scotia Capital acted as a co-manager of the Offering.

Certified Document Number: 72345178 - Page 12 of 26

57.     Defendant Tudor, Pickering, Holt & Co. Securities, Inc. ("Tudor") was an underwriter for the Offering.  In the Offering, Tudor agreed to purchase 165,000 Southwestern shares.  Tudor acted as a co-manager of the Offering.

58.     Defendant U.S. Bancorp Investments, Inc. ("U.S. Bancorp") was an underwriter for the Offering.  In the Offering, U.S. Bancorp agreed to purchase 165,000 Southwestern shares. U.S. Bancorp acted as a co-manager of the Offering.

59.     Defendants Merrill Lynch, Citigroup, J.P. Morgan, Wells Fargo, BNP Paribas, RBS, BMO, Mitsubishi, Mizuho, SMBC Nikko, BBVA, Credit Agricole, RBC, CIBC, SG Americas, BB&T, Baird, Comerica, Fifth Third, HSBC, Heikkinen, KeyBanc, Macquarie, PNC, Scotia Capital, Tudor, and U.S. Bancorp are referred to collectively as the "Underwriter Defendants."  The Underwriter Defendants each served as a financial advisor for and assisted in the preparation and dissemination of the Company's materially untrue and misleading Registration Statement and Prospectus.

60.     The Underwriter Defendants are primarily investment banking houses which specialize, *inter alia*, in underwriting public offerings of securities.  As the underwriters of the Offering, the Underwriter Defendants earned lucrative underwriting fees as a result of their participation in the Offering.

61.     In addition, the Underwriter Defendants met with potential investors and presented highly favorable but materially incorrect and/or materially misleading information about the Company, its business, products, plans, and financial prospects, and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

Certified Document Number: 72345178 - Page 13 of 26

62.     Representatives of the Underwriter Defendants also assisted the Company and the Individual Defendants in planning the Offering.  They also purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation.   During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning the Company's business, financial condition, products, plans, and prospects.

63.     In addition to having unlimited access to internal corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to the Company's lawyers, management, directors, and top executives to determine: (i) the strategy to best accomplish the Offering; (ii) the terms of the Offering, including the price at which the Company's common stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about the Company would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with their review of the Registration Statement.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and the Company's management and top executives, at a minimum, the Underwriter Defendants were negligent in not knowing of the Company's undisclosed existing problems and plans and the materially untrue statements and omissions contained in the Registration Statement as detailed herein.

64.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and to be declared effective in connection with the offer and sales of the Company's shares pursuant and/or traceable to the Offering and relevant offering materials, including to Plaintiff and the Class.

Certified Document Number: 72345178 - Page 14 of 26

65.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the untrue and misleading statements in the Offering's Registration Statement and Prospectus.  The Underwriter Defendants' negligent due diligence investigation was a substantial factor leading to the harm complained of herein.

**SUBSTANTIVE ALLEGATIONS**

**I.      SOUTHWESTERN ENERGY COMPANY**

66.     Southwestern is an independent energy company engaged in natural gas and oil exploration, development, and production.  The Company operates through two segments: Exploration and Production (E&P) and Midstream Services. The Company's operations are principally focused on the development of unconventional natural gas reservoirs located in Pennsylvania, West Virginia, and Arkansas.

67.     According to the Company's Registration Statement, the Company is "also focused on creating and capturing additional value through our natural gas gathering and marketing businesses, which we refer to as Midstream Services.

**II.     THE OFFERING AND THE COMPANY'S MATERIALLY UNTRUE AND INCOMPLETE REGISTRATION STATEMENT AND PROSPECTUS**

68.     On or around January 15, 2015, Southwestern conducted the Offering, selling 30,000,000 depositary shares, each of which represents a 1/20th interest in a share of Southwestern Energy's 6.25% Series B Mandatory Convertible Preferred Stock at a price of $50 per depositary share.

69.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state the facts necessary to make the statements not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.  Given the Individual Defendants' interest in ensuring a favorably high offering

price, it is hardly surprising that the Company's Registration Statement, and the Prospectus incorporated therein, presented a highly positive picture of the Company's business, performance, prospects, and products, while omitting crucial realities.

70.    The Registration Statement stated the following, in pertinent part, regarding its strategy to grow and develop new properties, specifically its Fayette and West Virginia properties:

*Exploration and Production*—Our primary business is the exploration for and production of natural gas and oil, with our operations almost entirely within the United States. ***Our recent activities have centered principally on two unconventional natural gas reservoirs, the Fayetteville Shale in Arkansas*** and the Marcellus Shale in northeast Pennsylvania. To a lesser extent, we have exploration and production activities ongoing in Colorado, Louisiana and Texas and in the Arkoma Basin in Arkansas and Oklahoma. We also actively seek to find and develop new oil and natural gas plays with significant exploration and exploitation potential, which we refer to as "New Ventures," and through acquisitions. We also operate drilling rigs in Arkansas and Pennsylvania, as well as in other operating areas, and provide oilfield products and services, principally serving our exploration and production operations. We also hold licenses to develop acreage in New Brunswick, Canada. Recently we acquired a significant stake in properties located in West Virginia and southwest Pennsylvania and have entered into agreements to acquire additional interests in those areas and in northeast Pennsylvania, as described below under "Recently Completed and Pending Asset Acquisitions."

* * *

***Exploit and Develop Our Positions in the Fayetteville Shale*, the Northeast *Marcellus Shale and the Assets Acquired in the Acquisitions. A key focus of the Company is to maximize the value of our significant acreage position in the Fayetteville Shale, which has provided sizeable production and reserve growth since we began drilling in 2004. As of December 31, 2013, we held approximately 905,684 net acres in the Fayetteville Shale, accounting for approximately 69% of our total proved oil and natural gas reserves and approximately 74% of our total oil and natural gas production during 2013.*** Additionally, we are actively drilling on portions of our properties in the northeast Marcellus Shale (292,446 net acres as of December 31, 2013, which will increase by approximately 46,700 acres upon the closing of the WPX Acquisition), and believe our production and reserves from this area will grow substantially over the next few years. We intend to develop further our acreage positions in the Fayetteville Shale, the northeast Marcellus Shale and the assets acquired in the Chesapeake Acquisition and to be acquired in the Statoil Acquisition and to improve our well results through the use of advanced technologies and detailed technical analysis of our properties.

* * *

16

We believe the long-term outlook for our business is favorable despite the continued uncertainty of natural gas prices in the United States and the legislative and regulatory challenges facing our industry. Our resource base, financial strength and disciplined investment of capital provide us with an opportunity:

• *to exploit and develop our positions in the Fayetteville Shale, the northeast Marcellus Shale and the multiple formations in West Virginia and southwest Pennsylvania acquired in the Chesapeake and Statoil Acquisitions*;

• to maximize efficiency through economies of scale in our key operating areas;

• to enhance our overall returns through expansion of our Midstream Services operations; and

• *to grow through new exploration and development activities.*

[Emphasis added.]

71.     The above statements were materially untrue and misleading and omitted material information because, upon information and belief, at the time of the Offering, the Company failed to disclose that it was experiencing severe liquidity and debt issues that threatened its ability to continue its drilling activities.

72.     In addition, pursuant to Item 303 of Regulation S-K (17 C.F.R. § 229.303), and the SEC's related interpretive releases thereto, including any known trends, issuers are required to disclose events or uncertainties that have had or are reasonably likely to cause the registrant's financial information not to be indicative of future operating results.  Any adverse events and/or uncertainties associated with demand for its products were reasonably likely to have a material impact on Southwestern's profitability, and, therefore, were required to be (but were not) disclosed in the Registration Statement under Item 303.

## THE TRUTH BEGINS TO EMERGE

73.     Unfortunately for investors, the truth concerning the nature and extent of the problems facing the Company did not begin to emerge until the Offering was complete when, on January 21, 2016, the Company revealed in a letter to the Texas Workforce Commission that it

would lay off 376 employees at its office located in Spring, Texas. The layoffs in Spring, Texas, were part of the Company's larger workforce reduction plan, revealed in its January 21, 2016 Form 8-K filing, to cut 1,100 positions, including 600 employees throughout its Fayetteville Shale operations in Arkansas. On January 25, 2016, as a result of news articles published detailing the Company's layoffs, Southwestern's stock price dropped 9%.

74.     Then, on February 25, 2016, after the market closed, the Company provided an update on its strategic plans for 2016. Most notably, the Company reiterated its "decision to temporarily halt its drilling activities . . . ." On this news, Southwestern's stock price dropped over 14%.

75.     On the same day, RBC Capital Markets analysts stated that Southwestern "reduced its 2016 CAPEX to $350-$450 million, down 80% from LY (~$1.8 billion)" and that "[i]n late January, [Southwestern] reduced its operating rig count to zero, compared to the eight rigs at the start of 4Q15."

76.     On February 29, 2016, Raymond James equity analyst Kevin Smith cut Southwestern to "underperform" from "market perform." Citigroup analyst Robert Morris also stated that the Company's initial 2016 capital budget was "well below expectations." The Company previously announced it plans no drilling activity in 2016 and will complete 20-30 wells that have already been drilled. On this news, Southwestern's stock Price dropped approximately 8%.

77.     On April 28, 2016, a putative class action was filed against Southwestern in Arkansas federal court claiming that it is shortchanging natural gas drilling rights holders. Plaintiff Charles Hicks claims the drilling Company fraudulently charges lessors fees for post-production marketing or withholds those fees from their royalty payments, and measures the gas

Certified Document Number: 72345178 - Page 18 of 26

extracted at the wrong time during production in order to reduce payments. Hicks seeks to represent more than 1,000 of his fellow drilling rights holders in the Fayetteville Shale formation paid by Southwestern. The complaint stated that "[t]hese methods of accounting for gas sales reduced the amount of royalties and excess royalties and unjustly increased the profits of the Defendants." On this news, Southwestern's stock price dropped 4.79%.

78.    Finally, on June 9, 2016, the Company announced after the market closed that it sold 55,000 net acres of land in West Virginia for $450 million due to its looming debt obligations. Specifically, the Company intends to use the sale to reduce the principal balance of its term loan, which is due in November 2018. On this news, Southwestern's stock price dropped another 8.45%.

<strong>PLAINTIFF'S CLASS ACTION ALLEGATIONS</strong>

79.    Plaintiff brings this action as a class action on behalf of a Class consisting of all those who purchased the Company's common stock pursuant or traceable to the Company's Offering and Registration Statement, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants; the officers and directors of the Company at all relevant times; members of their immediate families, and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

80.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class. The members of the proposed Class may be identified from records maintained by the Company or its transfer agent and may be notified of

the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

81.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

82.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

83.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

      a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

      b.     whether the Prospectus and Registration Statement contained materially false and misleading statements and omissions; and

      c.     to what extent Plaintiff and members of the Class have sustained damages and the proper measure of damages.

84.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

Certified Document Number: 72345178 - Page 20 of 26

## FIRST CLAIM

### Violations of § 11 of the Securities Act
### Against All Defendants

85.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

86.     This Claim is brought pursuant to § 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against each Defendant.

87.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

88.     The Company is the issuer of the securities purchased by Plaintiff and the Class. As such, the Company is strictly liable for the materially untrue statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

89.     The Individual Defendants each signed or authorized the signing of the Registration Statement.  As such, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement, and to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the document contained all facts required to be stated therein.  In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material

Certified Document Number: 72345178 - Page 21 of 26

fact necessary to make the statements made therein not misleading.  Accordingly, the Individual Defendants are liable to Plaintiff and the Class.

90.     The Underwriter Defendants each served as underwriters in connection with the Offering.  As such, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. These Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement.  They had a duty to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Underwriter Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material facts necessary to make the statements made therein not misleading.  Accordingly, each of the Underwriter Defendants is liable to Plaintiff and the Class.

91.     By reason of the conduct herein alleged, each Defendant violated § 11 of the Securities Act.

92.     Plaintiff acquired the Company's Convertible Preferred Stock pursuant or traceable to the Registration Statement, and without knowledge of the untruths and/or omissions alleged herein.  Plaintiff sustained damages, and the price of the Company's Convertible Preferred Stock declined substantially due to material misstatements in the Registration Statement.

93.     This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

94.     By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under § 11, as measured by the provisions of § 11(e), from Defendants and each of them, jointly and severally.

## SECOND CLAIM

### Violations of § 12(a)(2) of the Securities Act
### Against All Defendants

95.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

96.     Defendants were sellers, offerors, and/or solicitors of purchasers of the Company's securities offered pursuant to the Offering.   Defendants issued, caused to be issued, and signed the Registration Statement in connection with the Offering.   The Registration Statement was used to induce investors, such as Plaintiff and the other members of the Class, to purchase the Company's shares.

97.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein.  Defendants' acts of solicitation included participating in the preparation of the materially untrue and incomplete Registration Statement.

98.     As set forth more specifically above, the Registration Statement contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

99.     Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement.

100.    Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading.  No Defendant made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects.  Had they done so, Defendants could have known of the material misstatements and omissions alleged herein.

101.    This claim was brought within one year after discovery of the untrue statements and omissions in the Registration Statement and within three years after the Company's shares were sold to the Class in connection with the Offering.

## **THIRD CLAIM**

### For Violations of § 15 of the Securities Act
### Against the Individual Defendants

102.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

103.    The Individual Defendants were controlling persons of the Company within the meaning of § 15 of the Securities Act.  By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants, individually and collectively, had the power to influence, and exercised the same, over the Company to cause it to engage in the conduct complained of herein.

104.    By reason of such wrongful conduct, the Individual Defendants are liable pursuant to § 15 of the Securities Act.  As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of the Company's shares.

Certified Document Number: 72345178 - Page 24 of 26

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.      Declaring this action to be a proper class action and certifying Plaintiff as Class representative;

B.      Awarding Plaintiff and the other members of the Class compensatory damages;

C.      Awarding Plaintiff and the other members of the Class rescission on their § 12(a)(2) claims;

D.      Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.      Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  October 17, 2016.

Respectfully submitted,

/s/ Thomas E. Bilek
Thomas E. Bilek
State Bar No. 02313525
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720
tbilek@bileklaw.com

d A. Broggi
Thomas L. Laughlin
Joseph V. Halloran
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
230 Park Avenue, 17th Floor

25

New York, NY  10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
Email: dbroggi@scott-scott.com
       tlaughlin@scott-scott.com
       jhalloran@scott-scott.com

David R. Scott
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone: 860-537-5537
Facsimile:  860-537-4432
Email: david.scott@scott-scott.com

*Attorneys for Plaintiff*



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   December 4, 2016

Certified Document Number:        72345178 Total Pages:  26

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**